IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No.: ______________________________

| | |
|---|---|
| FREDERICK A. BAKER, and<br><br>TENDER LOVING CARE HOME, INC., d/b/a NC BROOKHAVEN BEHAVIORAL HEALTH,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, SALLY THAYER, CATHY SAMFORD, CLARICE RISING, and ROBIN SULFRIDGE,<br><br>Defendants. | COMPLAINT |

Plaintiffs Fred Baker ("Mr. Baker") and Tender Loving Care Home, Inc., d/b/a NC Brookhaven Behavioral Health ("TLC"), by and through undersigned counsel, hereby complain of Defendants as follows:

## INTRODUCTION

1. This action arises from intentional racial discrimination in regulatory enforcement against Mr. Baker and TLC following the natural death of a resident, Hubert Smiley, from myocardial infarction and coronary artery disease.

2. Despite a clean annual survey shortly beforehand, complete reporting by Plaintiffs, evidence of Mr. Smiley's cardiac disease, and video evidence of Plaintiffs'

emergency response, state officials characterized the event as choking caused by neglect, imposed the most serious citation and an $8,000 penalty, and treated Plaintiffs more harshly than similarly situated non-Black-owned or operated facilities.

3. Plaintiffs seek damages under 42 U.S.C. § 1983 against the responsible officials in their individual capacities for intentional race discrimination in violation of the Equal Protection Clause. Plaintiff plead alternative theories as permitted by Federal Rules of Civil Procedure 8(d).

## PARTIES

4. Plaintiff Fred Baker ("Mr. Baker") is a citizen and resident of Buncombe County, North Carolina. He owns and operates Plaintiff Tender Loving Care Home, Inc. d/b/a NC Brookhaven Behavioral Health ("TLC") with his wife, Jaquelyn Baker ("Mrs. Baker"). Mr. Baker is Black. Mr. Baker asserts claims for injuries personal to him, including discrimination, reputational injury, emotional distress, and interference with his protected rights. He does not seek to recover personally for injuries belonging solely to TLC.

5. Plaintiff TLC is a North Carolina corporation with its principal place of business at 10 Holly Ridge Drive, Asheville, North Carolina 28803. It operates a state-licensed and CARF-accredited mental-health facility. TLC asserts claims arising from injury to its license, business, finances, reputation, and procedural rights. TLC further alleges that Defendants targeted it because it was owned and operated by Mr. Baker.

6. Defendant North Carolina Department of Health and Human Services ("NCDHHS") is a department, agency, or instrumentality of the State of North Carolina.

Its Division of Health Service Regulation ("DHSR") administers and enforces State licensing, inspection, citation, and penalty requirements applicable to adult-care homes/the regulated facility at issue. Upon information and belief, at all relevant times, NCDHHS and/or DHSR received federal financial assistance and accepted that assistance subject to the nondiscrimination requirements of Title VI. The licensing, inspection, enforcement, and administrative functions involved in this action were part of NCDHHS's and/or DHSR's federally assisted operations.

7. Defendant Sally Thayer ("Thayer") is a natural person domiciled in the State of North Carolina and at all relevant times herein was an employee of NCDHHS acting under color of law who conducted, directed, or otherwise participated in the September 2023 investigation and materially caused the Type A1 citation.

8. Defendant Cathy Samford ("Samford") is a natural person domiciled in North Carolina and, at all relevant times, was an employee of NCDHHS/DHSR acting under color of law who conducted, directed, or otherwise participated in the September 2023 investigation and materially caused the Type A1 citation despite prior notice to NCDHHS/DHSR that her history with the Plaintiffs created bias against the Plaintiffs.

9. Defendant Clarice Rising ("Rising") is a natural person domiciled in North Carolina and, at all relevant times, was an employee of NCDHHS/DHSR acting under color of law who conducted, directed, or otherwise participated in the September 2023 investigation and materially caused the Type A1 citation.

10. Defendant Robin Sulfridge ("Sulfridge") is a natural person domiciled in North Carolina and, at all relevant times, was an employee of NCDHHS/DHSR acting

under color of law who conducted, directed, or otherwise participated in the September 2023 investigation and materially caused the Type A1 citation including issuance of the September 26, 2023, letter adopting the said violation and penalties.

11. At all relevant times, each individual Defendant acted under color of law and personally participated in, directed, approved, or knowingly implemented the intentionally discriminatory enforcement action that caused Plaintiffs' injuries.

## JURISDICTION & VENUE

12. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs assert a claim under 42 U.S.C. § 1983.

13. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events occurred in Buncombe County, North Carolina, and Plaintiffs reside or maintain their principal place of business within Buncombe County, North Carolina.

## FACTS

14. TLC provides residential mental-health services in Buncombe County and has been licensed by North Carolina and accredited by CARF.

15. Hubert Smiley ("Mr. Smiley") became a resident of TLC in or around 2009.

16. DHSR completed an annual survey of TLC on November 28, 2022, and cited no deficiencies, with Thayer thereafter transmitting that clean review to Mr. Baker on December 7, 2022.

17. On August 19, 2023, Mr. Smiley, age 69, suffered a cardiac emergency at TLC. Mrs. Baker summoned Mr. Baker, emergency services were called, and Mr. Baker immediately administered CPR until EMS arrived and assumed care.

18. Despite those efforts, Mr. Smiley died. His death certificate identifies myocardial infarction, with an onset-to-death interval of approximately one hour, and coronary artery disease of approximately five years' duration. It does not identify choking as a cause of death. A copy of the said death certificate is attached hereto as "Exhibit 1" and is incorporated herein by reference.

19. Mr. Smiley's medical history documented a family history of fatal heart attacks. Plaintiffs timely completed the reporting, paperwork, and documentation required by North Carolina.

20. Mr. Smiley was known to eat quickly and required mealtime monitoring. On the day in question, he apparently obtained a banana without staff knowledge. The presence of food in his airway did not establish that choking, neglect, or lack of monitoring caused his death.

21. On or around September 5, 2023, Thayer visited TLC to investigate. She made multiple visits and identified Samford, Moreno, and Rising as members of the investigative team.

22. Mr. Baker promptly objected to Samford's involvement because she previously had attempted, without cause, to suspend TLC's license and had been instructed or warned not to participate in inspections of TLC. Defendants disregarded Samford's history with Mr. Baker and TLC and did not provide a neutral investigator.

23. On or about September 8, 2023, Thayer completed her review and assigned a Type A1 violation, with an $8,000 administrative penalty.

24. The review asserted that TLC "failed to implement treatment plan strategies to meet the needs of 1 of 1 deceased client," implied EMS was called for choking, and blamed Plaintiffs for failing to supervise Mr. Smiley while eating.

25. Those conclusions omitted or minimized Plaintiffs' completed reporting, the cause of death shown in Mr. Smiley's death certificate, Mr. Smiley's longstanding cardiac disease and family history, the emergency response, and evidence that he obtained the banana without Plaintiffs' knowledge.

26. The agency simultaneously acknowledged that the death certificate identified myocardial infarction and coronary artery disease, not choking.

27. Mr. Smiley's guardian reported that Plaintiffs did not allow Mr. Smiley to eat alone and ordinarily supervised his meals. Nevertheless, Defendants treated the isolated access to a banana as serious neglect and harm.

28. On September 9, 2023, Mr. Baker submitted a plan of protection to DHSR confirming TLC would continue extremely close supervision of clients.

29. On September 26, 2023, Sulfridge sent a letter adopting the Type A1 citation stating that TLC violated N.C. Gen. Stat. Chapter 122C, Article 3. The letter communicated the accusation and penalty and described appeal options. A copy of the said September 26, 2023, letter is attached hereto as "Exhibit 2" and is incorporated herein by reference.

30. In response, Plaintiffs requested review, and a hearing was scheduled for November 9, 2023, at 1800 Umstead Drive, Williams Building, Raleigh, North Carolina.

31. On November 8, 2023, Mr. Baker advised NCDHHS/DHSR that he possessed video depicting Mr. Smiley's cardiac event and Plaintiffs' response. After learning of the video, upon information and belief, NCDHHS/DHSR attempted to change the forum of the hearing to Microsoft Teams rather than in-person.

32. Mr. Baker objected to the change to Microsoft Teams, as the change would create technological and/or logistical problems for Mr. Baker when presenting his evidence during the hearing.

33. Mr. Baker appeared at the scheduled location on November 9, 2023, but the hearing-room door was locked. While he attempted to attend, police approached and threatened or attempted to arrest him for refusing to leave. Mr. Baker cooperated and departed and was not charged with an offense. A police report from the November 9, 2023, incident identified Dannan Reives, another employee of NCDHHS, as the person who called law enforcement.

34. Plaintiffs later pursued administrative review of the citation in North Carolina Office of Administrative Hearings File No. 24 DHR 00170, with TLC, Mr. Baker, and NCDHHS agreeing, on or around April 30, 2024, that "A separate voluntary dismissal with prejudice is being filed. The parties have reached an agreement to reduce the type A1 Administrative Penalty from $8,000 to $500." Upon information and belief, the administrative settlement resolved the administrative validity of the penalty in that contested case, but it did not expressly release, adjudicate, or resolve Mr. Baker's and/or TLC's claims asserted herein. A true and accurate copy of the said April 30, 2024, Report

of Settlement Conference is attached hereto as "Exhibit 3" and is incorporated herein by reference.

35. In October 2024, TLC again received a review with no deficiencies. Plaintiffs allege that this later result is consistent with their contention that the 2023 enforcement response was unusually severe.

36. Mr. Baker is African-American and therefore a member of a protected class of persons.

37. TLC was owned and operated by Mr. Baker at all relevant times, and Defendants knew his race and relationship to TLC.

38. Defendants' discriminatory purpose is alleged based on the departure from the clean 2022 survey; use of an investigator to whom Plaintiffs had previously objected; disregard of medical and video evidence; shifting characterization of the event; severity of the sanction; and the sequence of events.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Equal Protection

39. Plaintiffs hereby incorporate all preceding paragraphs by reference as if fully set forth herein.

40. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

41. Title VI prohibits intentional discrimination by a recipient of federal financial assistance. A private plaintiff may sue to enforce § 601 of Title VI for intentional discrimination. See *Alexander v. Sandoval*, 532 U.S. 275 (2001).

42. Mr. Baker is Black/African American.

43. He was a participant in, applicant for, beneficiary of, or person subjected to NCDHHS/DHSR's federally assisted regulatory program because he is the owner and operator of TLC.

44. On or about September 8, 2023, NCDHHS/DHSR, through employees including Cathy Samford, Sally Thayer, Clarice Rice, and/or Robin Sulfridge, conducted an inspection, prepared findings, made enforcement decisions, and/or approved enforcement action concerning Mr. Smiley's death at TLC.

45. NCDHHS/DHSR issued or caused to be issued a Type A1 citation and an associated administrative penalty initially stated to be $8,000 against Mr. Baker and/or TLC based on its findings from "a survey completed on September 8, 2023" that concluded "Tender Loving Care Home has operated Tender Loving Care Home in violation of North Carolina General Statute N.C.G.S. § 122C, Article 3, Clients' Rights for individuals with mental illness, developmental disabilities, or substance abuse issues."

46. Upon information and belief, NCDHHS/DHSR took that action because of Mr. Baker's race and not merely because of a neutral regulatory determination as shown by the collective effect of (a) prior annual surveys of TLC that found no deficiencies, including while Mr. Smiley resided there; (b) the unfavorable bias of one or more members of the inspection/investigation team that performed an

inspection/investigation following Mr. Smiley's death; (c) the complete disregard of exculpatory evidence by the team performing the inspection/investigation; (d) the issuance of a Type A1 citation on the basis of findings upheld despite the biased nature of the inspection/investigation; (e) the last minute attempt to change the review hearing format from in-person to virtual via Microsoft Teams only after Mr. Baker disclosed the exculpatory video to NCDHHS review hearing personnel; and (f) the review of the Type A1 citation decision ending favorably for the Plaintiffs. The Plaintiffs allege discovery will be required to identify other such evidence of acts of racial discrimination against the Plaintiffs.

47. Through this intentional discrimination, NCDHHS excluded Mr. Baker from participation in, denied him the benefits of, and/or subjected him to racial discrimination under a federally assisted program or activity, in violation of 42 U.S.C. § 2000d.

48. NCDHHS had actual notice that accepting federal financial assistance subjected its covered program or activity to Title VI's prohibition against intentional race, color, and national-origin discrimination.

49. As a direct and proximate result of NCDHHS's violation, Mr. Baker suffered legally compensable harm, including payment or exposure to an administrative penalty, lost income or business opportunities, costs incurred responding to the discriminatory enforcement action, and other such supported economic or equitable injury.

50. NCDHHS's acceptance of federal financial assistance constitutes a waiver of Eleventh Amendment immunity for violations of Title VI to the extent provided by 42 U.S.C. § 2000d-7.

51. Mr. Baker seeks declaratory and injunctive relief, compensatory damages to the extent permitted by law, reasonable attorney's fees and costs under applicable law, and such other relief as the Court deems just and proper.

<u>SECOND CLAIM FOR RELIEF</u>
42 U.S.C. § 1983 – Sally Thayer

52. Plaintiffs hereby incorporate all preceding paragraphs by reference as if fully set forth herein.

53. Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

54. Mr. Baker is Black/African-American and is a member of a protected class.

55. TLC was owned and operated by Mr. Baker, and Thayer knew of that ownership and association.

56. At all times relevant herein, Thayer acted under color of law and personally participated in a materially adverse regulatory decision.

57. Thayer personally participated in the challenged conduct, as she conducted or directed an inspection/investigation of TLC related to Mr. Smiley's death; permitted at least one unfavorably biased NCDHHS employee to participate in said

inspection/investigation over Plaintiffs' objections; disregarded exculpatory evidence; created, altered, or adopted findings based on the biased inspection/investigation; and/or recommended, issued, or approved the Type A1 citation against TLC.

58. Thayer's conduct led to the issuance of the Type A1 citation and/or resulting injury to the Plaintiffs.

59. Upon information and belief, Thayer's actions were motivated, at least in part, by Mr. Baker's race and TLC's ownership and operation by Mr. Baker.

60. Upon information and belief, Thayer's differential treatment was not narrowly tailored to serve a compelling governmental interest and was not otherwise justified by a lawful basis unrelated to race.

61. By intentionally subjecting Mr. Baker to materially less favorable regulatory treatment because of his protected classification, Thayer deprived him of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

62. As a direct and proximate result, Mr. Baker suffered personal emotional distress, reputational injury, and interference with his constitutional rights, and TLC suffered business, compliance, reputational, and operational injuries.

63. As to damages, Plaintiffs each seek only damages recoverable by them individually.

64. At the time of the conduct, the constitutional prohibition against intentional race discrimination by state regulatory officials was clearly established.

65. Upon information and belief, Thayer's conduct was intentional, malicious, reckless, or in callous disregard of Plaintiffs' federally protected rights, supporting an award of punitive damages.

<u>THIRD CLAIM FOR RELIEF</u>
42 U.S.C. § 1983 – Cathy Samford

66. Plaintiffs hereby incorporate all preceding paragraphs by reference as if fully set forth herein.

67. Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

68. Mr. Baker is Black/African-American and is a member of a protected class.

69. TLC was owned and operated by Mr. Baker, and Samford knew of that ownership and association.

70. At all times relevant herein, Samford acted under color of law and personally participated in a materially adverse regulatory decision.

71. Samford personally participated in the challenged conduct, as she conducted an inspection/investigation of TLC related to Mr. Smiley's death; disregarded exculpatory evidence; created, altered, or adopted findings based on the biased inspection/investigation; and/or recommended, issued, or approved the Type A1 citation against TLC.

72. Samford's conduct led to the issuance of the Type A1 citation and/or resulting injury to the Plaintiffs.

73. Upon information and belief, Samford's actions were motivated, at least in part, by Mr. Baker's race and TLC's ownership and operation by Mr. Baker.

74. Upon information and belief, Samford's differential treatment was not narrowly tailored to serve a compelling governmental interest and was not otherwise justified by a lawful basis unrelated to race.

75. By intentionally subjecting Mr. Baker to materially less favorable regulatory treatment because of his protected classification, Samford deprived him of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

76. As a direct and proximate result, Mr. Baker suffered personal emotional distress, reputational injury, and interference with his constitutional rights, and TLC suffered business, compliance, reputational, and operational injuries.

77. As to damages, Plaintiffs each seek only damages recoverable by them individually.

78. At the time of the conduct, the constitutional prohibition against intentional race discrimination by state regulatory officials was clearly established.

79. Upon information and belief, Samford's conduct was intentional, malicious, reckless, or in callous disregard of Plaintiffs' federally protected rights, supporting an award of punitive damages.

<u>FOURTH CLAIM FOR RELIEF</u>
42 U.S.C. § 1983 – Clarice Rising

80. Plaintiffs hereby incorporate all preceding paragraphs by reference as if fully set forth herein.

81. Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

82. Mr. Baker is Black/African-American and is a member of a protected class.

83. TLC was owned and operated by Mr. Baker, and Rising knew of that ownership and association.

84. At all times relevant herein, Rising acted under color of law and personally participated in a materially adverse regulatory decision.

85. Rising personally participated in the challenged conduct, as she conducted an inspection/investigation of TLC related to Mr. Smiley's death; disregarded exculpatory evidence; created, altered, or adopted findings based on the biased inspection/investigation; and/or recommended, issued, or approved the Type A1 citation against TLC.

86. Rising's conduct led to the issuance of the Type A1 citation and/or resulting injury to the Plaintiffs.

87. Upon information and belief, Rising's actions were motivated, at least in part, by Mr. Baker's race and TLC's ownership and operation by Mr. Baker.

88. Upon information and belief, Rising's differential treatment was not narrowly tailored to serve a compelling governmental interest and was not otherwise justified by a lawful basis unrelated to race.

89. By intentionally subjecting Mr. Baker to materially less favorable regulatory treatment because of his protected classification, Rising deprived him of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

90. As a direct and proximate result, Mr. Baker suffered personal emotional distress, reputational injury, and interference with his constitutional rights, and TLC suffered business, compliance, reputational, and operational injuries.

91. As to damages, Plaintiffs each seek only damages recoverable by them individually.

92. At the time of the conduct, the constitutional prohibition against intentional race discrimination by state regulatory officials was clearly established.

93. Upon information and belief, Rising's conduct was intentional, malicious, reckless, or in callous disregard of Plaintiffs' federally protected rights, supporting an award of punitive damages.

FIFTH CLAIM FOR RELIEF
42 U.S.C. § 1983 – Robin Sulfridge

94. Plaintiffs hereby incorporate all preceding paragraphs by reference as if fully set forth herein.

95. Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects any citizen of the United

States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

96. Mr. Baker is Black/African-American and is a member of a protected class.

97. TLC was owned and operated by Mr. Baker, and Sulfridge knew of that ownership and association.

98. At all times relevant herein, Sulfridge acted under color of law and personally participated in a materially adverse regulatory decision.

99. Sulfridge personally participated in the challenged conduct, as she conducted an inspection/investigation of TLC related to Mr. Smiley's death; disregarded exculpatory evidence; created, altered, or adopted findings based on the biased inspection/investigation; and/or recommended, issued, or approved the Type A1 citation against TLC.

100. Sulfridge's conduct led to the issuance of the Type A1 citation and/or resulting injury to the Plaintiffs.

101. Upon information and belief, Sulfridge's actions were motivated, at least in part, by Mr. Baker's race and TLC's ownership and operation by Mr. Baker.

102. Upon information and belief, Sulfridge's differential treatment was not narrowly tailored to serve a compelling governmental interest and was not otherwise justified by a lawful basis unrelated to race.

103. By intentionally subjecting Mr. Baker to materially less favorable regulatory treatment because of his protected classification, Sulfridge deprived him of equal

protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

104. As a direct and proximate result, Mr. Baker suffered personal emotional distress, reputational injury, and interference with his constitutional rights, and TLC suffered business, compliance, reputational, and operational injuries.

105. As to damages, Plaintiffs each seek only damages recoverable by them individually.

106. At the time of the conduct, the constitutional prohibition against intentional race discrimination by state regulatory officials was clearly established.

107. Upon information and belief, Sulfridge's conduct was intentional, malicious, reckless, or in callous disregard of Plaintiffs' federally protected rights, supporting an award of punitive damages.

## SIXTH CLAIM FOR RELIEF
Malicious Prosecution – Individual Defendants

108. Plaintiffs hereby incorporate all preceding paragraphs by reference as if fully set forth herein.

109. To recover for malicious prosecution, a plaintiff must show (a) the defendant initiated the earlier proceeding; (b) there was malice by the defendant in doing so; (c) there was lack of probably cause for initiation of the earlier proceeding; and (d) termination of the previous proceeding was in favor of the plaintiff. Additionally, where the proceeding was a civil action, the plaintiff must prove special damages.

110. Thayer, Samford, Sulfridge, and Rising, acting as agents of the NCDHSS, initiated and continued the administrative enforcement proceeding by issuing the Type A1 Citation and seeking to enforce an $8,000.00 penalty against the Plaintiffs.

111. Thayer, Samford, Sulfridge, and Rising initiated and prosecuted the Type A1 citation proceeding without probable cause in that:

a. Mr. Smiley's death certificate, an official and authoritative medical document, identified the cause of death as myocardial infarction (Heart Attack), not choking;

b. Defendants nevertheless concluded that Plaintiff failed to properly supervise Mr. Smiley while eating and improperly attributed his death to choking despite the absence of any medical determination supporting that conclusion;

c. The death certificate did not list choking or any food-related obstruction as a cause or contributing factor in Mr. Smiley's death;

d. Plaintiff possessed video footage of the medical emergency that documented the events and would have disproved the choking allegation;

e. Plaintiff had administered CPR immediately and called EMS promptly, demonstrating proper response to a cardiac emergency;

f. After Mr. Smiley's death, Mr. Baker and his wife completed all required reporting, paperwork, and documentation required, as dictated by the State of North Carolina.

g. Plaintiff's facility received zero deficiencies in its most recent annual survey on November 28, 2022, and again received zero deficiencies in October 2024, demonstrating a consistent pattern of compliance; and

h. No reasonable investigator reviewing the death certificate and surrounding facts could have concluded that Plaintiff failed to properly supervise Mr. Smiley while eating or that choking caused Mr. Smiley's death.

112. Thayer, Samford, Sulfridge, and Rising initiated and prosecuted the Type A1 citation proceeding with malice in that:

a. Defendants issued the citation and assessed an $8,000 penalty despite the death certificate plainly identifying the cause of death as myocardial infarction (Heart Attack), not choking;

b. Defendants' conclusion that Mr. Smiley choked on a banana directly contradicted the official medical determination of cause of death;

c. Plaintiff had objected to Defendant Ms. Samford's involvement due to prior alleged bias, yet Samford participated in or influenced the investigation;

d. After Plaintiff notified Defendants on November 8, 2023, that he possessed video evidence, Defendants attempted to change the hearing format and then locked Plaintiff out of the hearing room the next day; and

e. Defendants called police and had Plaintiff removed from the building to prevent him from presenting the video evidence.

113. The administrative enforcement proceeding terminated favorably for the Plaintiffs in that the originally assessed $8,000 administrative penalty was reduced to

$500, Plaintiff was not required to pay the remaining $7,500, and Plaintiff completed additional training approved by the North Carolina Department of Health and Human Services.

114. As a result of the administrative enforcement proceeding, the Plaintiffs suffered legally compensable harm, including exposure to administrative penalty, lost income or business opportunities, costs incurred responding to the enforcement action, and other such supported economic or equitable injury.

## JURY DEMAND

115. Plaintiffs hereby demand a trial by jury on all claims so triable.

WHEREFORE, Plaintiffs, Frederick A. Baker and Tender Loving Care Home, Inc., d/b/a NC Brookhaven Behavioral Health, respectfully request that the Court:

1. Declare that Defendant NCDHHS's conduct violated Title VI of the Civil Rights Act of 1964 and enter appropriate injunctive relief prohibiting NCDHHS/DHSR from engaging in discriminatory enforcement against Mr. Baker;

2. Aware compensatory damages in an amount to be determined at trial, limited to remedies available under Title VI;

3. Enter judgment declaring that Defendants Sally Thayer, Cathy Samford, Clarice Rising, and Robin Sulfridge liable for violating Mr. Baker's and/or TLC's rights under the Equal Protection Clause of the Fourteenth Amendment;

4. Enter judgment declaring that Defendants Sally Thayer, Cathy Samford, Clarice Rising, and Robin Sulfridge liable for malicious prosecution under North Carolina law;

5. Award compensatory damages against each liable individual Defendant in an amount to be determined at trial and apportioned or imposed jointly to the extent permitted by law;

6. Award punitive damages against each individual Defendant whose individual conduct satisfies the governing standard;

7. Award reasonable attorney's fees and costs under 42 U.S.C. § 1988;

8. That the Plaintiffs have a jury trial on all issues so triable; and

9. To order such other and further relief as the Court deems just and proper.

This 12th day of August 2026.

KING LAW OFFICES, PC

/s/Nicholas A. White
Nicholas A. White
NC Bar: 53661
22 S. Pack Square, Ste 700
Asheville, NC 28801
(828) 288-3085
nwhite@kinglawoffices.com
*Attorney for the Plaintiffs*